IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| KAREN SMITH, Individually and as the Independent Administrator of the Estate of Dennis Wayne Smith; JASON SMITH; and JUSTIN SMITH,<br><br>   *Plaintiffs*,<br><br>*v.*<br><br>MICHELS CORPORATION,<br><br>   *Defendant*. | § § § § § § § § § § § § § § | CASE NO. 2:13-CV-00185-JRG |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion and Brief for Partial Summary Judgment on Gross Negligence (Dkt. No. 44), filed January 2, 2014. The Court heard argument on this Motion on February 13, 2014, and informed the parties on February 19, 2014 that Defendant's Motion was and is **DENIED**. As a part of announcing its ruling from the bench, the Court advised the parties that it intended to enter a written opinion setting forth its reasoning in detail. This Opinion addresses and explains such reasoning.

    **I.    BACKGROUND**

This action arises from a fatal vehicular accident which occurred on the evening of November 20, 2012, between Mount Vernon, Texas and Mount Pleasant, Texas, on U.S.

Highway 67, a two-lane highway.[1] On that evening, Mr. Larry Peace, then a driver for defendant Michels Corporation ("Michels"), was traveling westbound on Highway 67 in a Michels Corporation flatbed tractor-trailer toward a Michels Corporation pipe yard. He missed his turn into the pipe yard. Having missed the turn, he proceeded to stop the vehicle and back the trailer across the oncoming lane of traffic toward County Road 2080 in an attempt to turn around and return to the pipe yard entrance. In doing so, his trailer completely blocked oncoming traffic. At this time, Decedent Dennis Wayne Smith, who was traveling eastbound on Highway 67, collided with Mr. Peace's tractor-trailer and died as a result.

After the accident, Michels removed Mr. Peace from his duties as a driver but continued to pay his salary (and even to pay him overtime) until November 30, 2013—11 days after Mr. Peace's deposition was taken in this case. He did not report to an office for duty. Mr. Peace was never formally disciplined, reprimanded, or demoted. He testified at his deposition that Michels' management had never expressed any kind of disapproval about his driving that night.

On February 28, 2013, Plaintiffs sued Michels for negligence. On December 30, 2013, Plaintiffs amended their Complaint to include a claim of gross negligence against Defendant Michels Corporation based upon the theory that Michels had ratified, approved, or failed to repudiate Mr. Peace's gross negligence. Defendant then filed this motion, asking the Court to grant summary judgment that Michels could not, as a matter of law, be held liable for Mr. Peace's gross negligence.[2]

---

[1] While a clear majority of the facts are undisputed, this summary resolves any disputes regarding the facts in favor of the non-moving Plaintiffs, as is proper in the context of a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[2] The Court understands this, not as an attempt by Defendant Michels to evade liability for *compensatory* damages for Mr. Peace's gross or ordinary negligence, but rather as a petition for summary judgment to preclude exemplary damages, which require as a prerequisite a finding of gross negligence.

## II. LEGAL STANDARDS

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id*. at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering motions for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. *Id.* at 255; *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir.2008).

Texas has adopted the Restatement (Second) of Torts § 909 approach to the question of whether a principal may be liable for punitive damages stemming from an agent's gross negligence. *King v. McGuff*, 234 Sw. 2d 403, 405 (Tex. 1950). Both the Restatement and Texas law teach that "[p]unitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if . . . the employer or a manager of the employer ratified or approved the act." *Id.*; *see* Restatement (Second) of Torts § 909 (1979). The idea is that, though a principal may be held liable for the ordinary negligence of an agent because of the principal's right to control the agent's actions, a principal may only be liable for punitive damages if the principal has behaved culpably—in this case, by ratifying or manifesting approval of the agent's actions. *See* Restatement (Second) of Torts, § 909, cmt. b (1979).

3

Ratification is a concept used in agency law to describe the relationship between the conduct of a principal and the acts of an agent who has acted outside or at the boundaries of the scope of their authority. A principal ratifies the acts of its agent, and thus adopts the legal effects of that action, by "manifesting assent that the act shall affect the person's legal relations, or [by] conduct that justifies a reasonable assumption that the person so consents." Restatement (Third of Agency § 4.01 (2006). Ratification creates this relationship of authority, even in the absence of *actual* authority, because "it is fair to hold the principal to [legal] consequences when the principal has, after the fact, assented to the agent's act." *Id.* cmt. b.

Ratification, like many other agency concepts, is positioned somewhat awkwardly between principals of tort and contract law. For instance, it is well established that a principal may ratify a *contract* by essentially doing nothing. "[K]nowing acceptance of the benefit of a transaction ratifies the act of entering into the transaction." *Id.* cmt. d. In tort, however, it is unhelpful to ask whether a principal "accepted the benefit" of an employee's tortious conduct. Nor do principals often explicitly adopt their employees' tortious conduct. Rather, in tort the inquiry seems to tend toward "approval" of the tortious conduct. The Restatement offers this insight:

> It is a question of fact whether conduct is sufficient to indicate consent. Conduct that can be otherwise explained may not effect ratification. For example, a principal's failure to terminate or reprimand an employee by itself is not likely to ratify the employee's unauthorized action because the employer may have had varied reasons for failing to take action adverse to an employee. On the other hand, if the employer is aware of ongoing conduct encompassing numerous acts by the employee, failure to terminate may constitute ratification, as in some circumstances may the promotion or celebration of such an employee.

*Id.* cmt. d.

In determining when an employer may be said to have ratified an employee's tortious conduct, a Texas appellate court has approved a definition of ratification that includes "the adoption, confirmation, or failure to repudiate prior unlawful acts which were not legally binding at a time when the [defendant] had the right and knowledge of the facts necessary to repudiate such conduct." *Hinote v. Oil, Chem. & Atomic Workers Intl. Union*, AFL-CIO, Local 4-23 777 Sw. 2d 134, 141 (Tex. App. 1989). The Fifth Circuit Court of Appeals has adopted this "failed to repudiate" language and held that "in some cases, an employer's retention of an employee who has committed a tort may constitute ratification." *Prunty v. Ark. Freightways, Inc.*, 16 F.3d 649, 653 (5th Cir. 1994) (citing *Gulf, Colo., & Santa Fe Ry. Co. v. Reed*, 15 Sw. 1105, 1107 (Tex. 1891); *Intl. & Great Northern R.R. co. v. McDonald*, 12 Sw. 860, 862 (Tex. 1889)); *but see Donahue v. Melrose Hotel*, No. 3:95-cv-2630-R, 1997 WL 148012, at *11 n.5 (N.D. Tex. Mar. 26, 1997) (reading the *Prunty* court's cited case law as supporting the opinion that mere retention can never be sufficient to find ratification). The Fifth Circuit has laid out a four-part test for when retention of an employee may be an act of ratification:

> When the company 1) knows about the employee's acts, 2) recognizes that the employee's acts will continue if he is retained, 3) does nothing to prevent the ongoing tortious acts, and 4) chooses to retain the employee, the company ratifies the tortious acts and may be liable for exemplary damages.

*Id.* at 653-54. Obviously, the Circuit's formulation outlines conditions that are sufficient for ratification, but nowhere does the Circuit hold that this test is exclusive or mandatory. Even if an employer removes an offending employee from the potential for more harm, it may nonetheless ratify, approve, or fail to repudiate the employee's conduct and thus subject it to damages. In the absence of any evidence *beyond* retention alone, however, some form of continuing potential for harm is necessary.

5

## III.  ANALYSIS

In this case, it is undisputed that Michels Corporation retained Mr. Peace for more than a year after the accident that is the subject of this suit. It is also undisputed that Michels took action to remove Mr. Peace from ongoing driving duties. If these were the only facts, Defendant would be entitled to summary judgment on the issue of punitive damages. *See Prunty*, 16 F.3d at 653-54; Restatement (Third) of Agency § 4.01, cmt. d (2006). They are not.

In addition to evidence of retention, Plaintiffs have produced evidence that Mr. Peace was paid while removed from duty, and even that he was paid as if he were working 60 hours per week. Mr. Peace was not required to do other work or even report for work. In effect, Michels provided Peace with a year-long paid vacation. Plaintiffs have further produced evidence that Mr. Peace was not disciplined until more than a year after the accident. Considered in their totality, these facts, *in combination with* Michels's retention of Mr. Peace as an employee, raise a material fact question about whether or not Michels approved of Peace's tortious conduct. There is a triable issue of material fact as to whether Michels assented to Mr. Peace's conduct, sending a tacit message to Mr. Peace or to its other employees that it approved of Mr. Peace's behavior on the night of November 20, 2012.

In order to reach a jury on the issue of punitive damages, Plaintiff will have to present sufficient evidence of Michels's assent or approval to allow a reasonable juror to conclude that Michels knowingly accepted the legal consequences of Mr. Peace's actions. Plaintiffs will have to preserve their factual dispute even in the face of any potentially mitigating explanations of Michels's conduct that would undercut the conclusion that its conduct manifested approval of Mr. Peace's actions.

This Court concludes that it will be better able to evaluate and judge these matters after Plaintiffs have fully presented their evidence and Defendant has had its full opportunity to counter the same in open court. Such conclusion leads this Court to find that the motion for partial summary judgment before it should be denied.

## IV. CONCLUSION

The Court finds that a triable issue of material fact remains and that the current state of Texas law does not require summary judgment under these particular circumstances. Accordingly, Defendant's Motion (Dkt. No. 44) is **DENIED**.

**So Ordered and Signed on this**

**Feb 21, 2014**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE